have been drawn up in general terms, "for whom it may concern."

Upon the whole, my opinion is, that the plaintiff in the present case is entitled to recover for a total loss. This opinion is founded upon the nature and terms of the present policy, operating upon the usage in this particular trade. I consider, that the parties to this policy intended to cover the whole interest of the plaintiff, as a valued interest for the whole voyage, not only in the original clothing, but in the proceeds thereof, when attached by a lien, or a claim in the nature thereof, to the shares of the seamen in the proceeds of the adventure; and further, that the property insured was to be treated, as in the nature of an outfit; and that, if by the perils insured against, the voyage was totally lost and frustrated, then that the plaintiff was entitled to recover the full amount of the insurance, according to the valuation in the policy, leaving to the underwriters all their rights to salvage, &c., under the abandonment, as in the common cases of an insurance upon outfits, and other special interests.

## Case No. 6,014.

HANCOX v. The PHENIX.

[See Case No. 11,111.]

## Case No. 6,015.

HAND et al. v. The ELVIRA.

[Gilp. 60.] [1]

District Court, E. D. Pennsylvania. April 14, 1829.

SALVAGE—CLAIM OF PILOT—CONTESTING SALVORS.

1. What a pilot does beyond the limits of his duty as such may be the foundation of a claim for salvage, but not such acts as are within them.

[Cited in Lea v. The Alexander, Case No. 8,-153; The Wave, Id. 17,297.]

2. If property abandoned by the master and crew, be taken possession of by a set of salvors; a second set have no right to interfere with them and become participators in the salvage, unless it appears that the first would not have been able to effect the purpose without the aid of the others.

3. The amount of salvage to be allowed must be estimated by the compound consideration of the danger and importance of the service; the value of the property saved is an essential circumstance in estimating the latter.

[Cited in The Wave. Case No. 17,297. Applied in The Charles, Id. 4,556. Cited in The Choteau, 9 Fed. 212; The Sandringham, 10 Fed. 571.]

4. A previous and contradictory statement of a witness may be given in evidence to impeach his credit, but not as proof of the facts formerly stated.

[Cited in Merriman v. The May Queen, Case No. 9,481.]

[This was a libel in admiralty by Recompense Hand, Daniel Hildreth, Enoch El-

dridge, John Reeve, Isaac Smith, William Curgie, Francis Elbertson, Humphrey Hughes, assignee of Simeon Palmer, Jeremiah Bennett, Aaron Bennett, Albert Hughes, and Enoch Willis against the schooner Elvira and her cargo.]

P. A. Browne, for libellants.

Mr. Chauncey, for owner and claimant.

HOPKINSON, District Judge. This is a claim of salvage by the owners and crew of the pilot boat Leo, for services rendered to the schooner Elvira, by which it is alleged she was relieved from great danger and distress, and brought safely into the port of Philadelphia. A correct and careful understanding of the facts of the case is peculiarly indispensable to a just decision of it, for every claim of this description turns on its own circumstances. The argument of the counsel for the libellants has been mainly raised on the statement published in a paper of this city, and furnished by John Seabury, the second mate of the Elvira, which narrates the occurrences of the voyage in the usual animated and exaggerated style of such communications made for the public, and not for the more accurate purposes of a judicial inquiry. I cannot receive this publication as any evidence of the facts stated in it. John Seabury was examined as a witness on behalf of the respondent; what, therefore, he had said or published at another time, was properly admitted to impeach or test his credibility; and so far but no farther was it legal evidence. If a witness at another time has given an account of a transaction different from that given at the trial, he may be impeached by proving what he has said at another time, on the question of his credit; but you cannot substitute the other account in the place of that which you have discredited, making it thus the evidence of the cause. In this case, the difference is rather in the force of the expressions used, in the colouring of the description, in swelling exaggerations, than in matters of fact and essential importance. In a seaman's protest and reports the waves are always mountain high. the winds never less than a hurricane, and the peril of life generally impending. There may be some pride of authorship in these compositions, and the writer may aim to exhibit his power and skill in describing dangers.

I will take the facts as they have been given by the witnesses examined here; and there is no material variance between those on the one side and on the other, where they speak of the same transactions. The Elvira sailed from St. Augustine, in Florida, on the 8th day of February last, loaded with live oak for the navy yard, at Norfolk, and bound for that port. She had on board the captain, the first mate. the second mate. two hands before the mast. two cabin passengers and seven steerage passengers who had been em-